EUGENE L. CHERRY,

        Plaintiff,

      v.                                    Case No. 18-C-1602

JEAN LUTSEY, et al.,

        Defendants.

## DECISION AND ORDER

Plaintiff Eugene L. Cherry, who is a Wisconsin state prisoner representing himself, filed a complaint under 42 U.S.C. § 1983. The court screened the complaint and allowed Cherry to proceed on Eighth Amendment claims against Jean Lutsey, Mary Alsteen, Christina Serrano, Andrew Terrell, Phil Przybylinski, and Dr. Cynthia Koren related to not receiving medication after undergoing hernia surgery. More specifically, Cherry alleges Serrano, Terrell, and Przybylinski denied him pain medications; that Koren and Lutsey ignored his complaints of pain; and that Alsteen failed to direct his complaint of excruciating pain to Koren. The State Defendants (Lutsey, Alsteen, Serrano, Terrell, Przybylinski), Koren (represented by private counsel), and Cherry have moved for summary judgment. ECF Nos. 54, 61, 76. The motions are fully briefed and before this court for decision.

### BACKGROUND

The facts in this section are taken from Cherry's Proposed Findings of Fact, Defendant Koren's Proposed Findings of Fact, and the State Defendants' Proposed Findings of Fact. ECF Nos. 55, 63, 78. The court has also reviewed the parties' supporting declarations and affidavits.

The court will consider only those proposed facts that are supported by admissible evidence. Fed. R. Civ. P. 56(c)(1) & (4).

**A. The Parties**

Cherry is an inmate housed at the Green Bay Correctional Institution (GBCI), where he has been housed since April 2011. Cherry's Proposed Findings of Fact, ECF No. 55, ¶ 1. Koren is a physician at GBCI. Koren's Proposed Findings of Fact, ECF No. 63, ¶ 2. Lutsey worked as the manager of GBCI's Health Services Unit (HSU). State Defendants' Proposed Findings of Fact, ECF No. 78, ¶ 3. Alsteen and Serrano were both nurses in the HSU. *Id.*, ¶ 4. Both Terrell and Przybylinski worked as correctional officers. *Id.*, ¶ 5.

**B. Surgery**

Cherry has had ongoing acid reflux problems for years. ECF No. 55, ¶ 2. As a result, he cannot take ibuprofen for his back pain (or, presumably, any other pain). *Id.* He was prescribed regular APAP Tylenol by both past and then-present doctors at GBCI. *Id.*

Cherry underwent laparoscopic surgery on August 23, 2018 to fix a hernia in his testicle. *Id.*; ECF No. 78, ¶ 6. The surgeon did not prescribe pain medication. ECF No. 63, ¶¶ 8–9. Koren prescribed three days of Hydrocodone/APAP post-surgery. *Id.*, ¶¶ 5–6. Cherry also received a new box of Tylenol on August 23, 2018. ECF No. 78, ¶ 7. In addition to prescribing the Hydrocodone, Koren issued instructions to Cherry, including no lifting over ten pounds, pushing, pulling, or increasing abdominal pressure for four weeks; to deep breathe and cough every hour for one week; to walk two to three times daily; and to ice the incision sites three times a day for three days. ECF No. 63, ¶ 11. Cherry admitted to not following the instructions to breathe deeply and cough. *Id.*, ¶ 12.

2

Case 1:18-cv-01602-WCG   Filed 09/01/20   Page 2 of 13   Document 98

### C. Medication Pass

Vicodin (Hydrocodone/APAP) is a staff-controlled medication at GBCI. ECF No. 78, ¶ 8. When an inmate has a prescription to receive Vicodin four times per day, the medication is made available at scheduled times: 6:00 a.m., 11:00 a.m., 3:30 p.m., and 8:45 p.m. *Id.*, ¶ 9. Inmates on Cherry's unit had to come out of their cells to receive their medications—they did not receive them in their cells. *Id.*, ¶ 10. Prison staff maintained a list of inmates who received medications at each of these times. *Id.*, ¶ 11. Inmates on the list were supposed to be let out of their cells at the appropriate times to receive their medication. *Id.*

### D. Post-Op and Medication

The day after surgery, August 24, 2018, Cherry went to the HSU for follow-up. ECF No. 63, ¶ 13. Medical records indicate he walked into the HSU around 9:00 a.m. with an "even and steady gait" and "in no acute distress." *Id.*; ECF No. 64-2 at 10. Examination showed no swelling or tenderness to the incision sites. ECF No. 63, ¶ 13.

During the 11:00 a.m. medication pass, Cherry had to yell to an officer for his cell door to be opened. ECF No. 78, ¶ 12; *see also* Aug. 24, 2018 Inmate Complaint, ECF No. 84-1 at 11. An officer opened his door, and Cherry received his Vicodin. ECF No. 78, ¶ 12. During the 3:30 p.m. medication pass, which Serrano conducted, Cherry's cell door did not open again. *Id.*, ¶¶ 13–14. When Cherry did not show up to get his medication, Serrano believed Cherry was declining to take his medication, which she knew was prescribed to be taken "as needed." *Id.*, ¶ 14. Serrano was not in charge of maintaining the list of inmates who need medications. *Id.*, ¶ 31.

Around 3:30 p.m., Cherry was in "extreme pain." ECF No. 55, ¶ 5. Terrell was walking through the unit, and Cherry told Terrell that he needed his afternoon meds because he was in pain. *Id.*, ¶ 5; ECF No. 78, ¶ 15. According to Cherry, Terrell responded rudely and ignored his pleas

3

for help, refusing to let Cherry out of his cell to receive his medication. ECF No. 55, ¶ 5; ECF No. 78, ¶ 16. Around 45 minutes later, Terrell was conducting formal count. ECF No. 55, ¶ 6; ECF No. 78, ¶ 17. Cherry says that he told Terrell that he was in "extreme pain," and Terrell replied that Nurse Serrano was not on the unit and that he had no meds to give Cherry. *Id.* Terrell did not believe that Cherry was in extreme pain when they spoke; Cherry was not bent over in pain or showing other obvious signs of distress. ECF No. 78, ¶¶ 19–20. Terrell recalls Cherry asking about the medication and believes that he called the HSU, who told him Cherry's medication was not available. *Id.*, ¶ 18.

Around 5:30, Cherry was let out of his cell to go to dinner, and he told Lieutenant Cole (not a defendant) about not being given his pain medications and that he was in "extreme pain." *Id.*, ¶ 21; ECF No. 55, ¶ 8. Cole told Cherry to talk to Przybylinski. ECF No. 55, ¶ 8; ECF No. 78, ¶ 22. Cherry's version of events is that he asked Przybylinski about his medication on the way to dinner, on the way back from dinner, and again around 7:00 p.m. ECF No. 55, ¶ 9; ECF No. 78, ¶ 22. According to Cherry, Przybylinski told him each time that he had not gotten around to calling the HSU because he was busy. ECF No. 78, ¶ 23. After the third time, according to Cherry, Przybylinski yelled at Cherry and ordered him to return to his cell after Cherry told him he would be filing an inmate complaint. ECF No. 55, ¶ 10. According to Cherry, he returned to his cell in "extreme pain." *Id.*, ¶ 11.

Przybylinski does not recall this particular incident, but he does aver that he took inmates' health needs "extremely seriously." ECF No. 80, ¶ 7. If he had seen Cherry in extreme pain, he would have immediately notified HSU so that health officials could determine whether he needed assessment, treatment, medication, etc. *Id.*, ¶ 9. Przybylinski does not recall Cherry bent over in pain or otherwise in obvious discomfort. ECF No. 78, ¶ 24.

Cherry never received his 3:30 p.m. dose of Vicodin. ECF No. 78, ¶ 25. He did receive his next dose of Vicodin at approximately 9:00 p.m. *Id.*, ¶ 26. The 3:30 p.m. dose on August 24, 2018 was the only dose Cherry missed during the three-day prescription. *Id.*, ¶ 27.

On August 24, 2018, Cherry complained to Lutsey via an HSU request and filed an inmate complaint. ECF No. 55, ¶ 12; ECF No. 78, ¶ 32. Cherry says that he complained to Lutsey on "numerous" occasions. ECF No. 55, ¶ 13. Specifically, he wrote to her (and Koren) on August 26 and August 29, 2018 via health service requests (HSR). *Id.*, ¶ 15; ECF No. 78, ¶ 36. According to Lutsey, she did not know about the missed Vicodin dose until an institution complaint examiner contacted her after reviewing the inmate complaint on August 27, 2018. ECF No. 78, ¶¶ 32–33. She told the complaint examiner that the medication Cherry received—Vicodin and Tylenol—was reasonable for the type of surgery he had. *Id.*, ¶ 35. According to Lutsey, this is the only involvement she had in the case. *Id.*, ¶ 34.

In the August 26 and 29, 2018 health service requests, Cherry complained that Koren had ordered Vicodin for only three days. ECF No. 78, ¶ 36. The first HSR was answered by a non-defendant nurse, who advised Cherry that he had been scheduled to see Koren. *Id.*, ¶ 37. The second HSR was received on August 30, 2018, and Alsteen responded the same day. *Id.*, ¶ 40. Alsteen advised Cherry that Koren had prescribed Vicodin for only three days, that he could take the Tylenol issued to him on August 23, 2018, and that a nurse would see him the next day for a sick call. *Id.*, ¶ 38; ECF No. 55, ¶ 16. Alsteen also knew that, according to the previous HSR, Cherry had been scheduled to see the doctor. ECF No. 78, ¶ 39. Cherry saw a nurse, who is not a defendant, on August 31, 2018. *Id.*, ¶ 41. According to his medical records, he walked with an even and steady gait and in no acute distress. ECF No. 63, ¶ 14; ECF No. 64-2 at 10. He rated his pain at 4/10. ECF No. 63, ¶ 14. A visual assessment of Cherry's abdomen showed slight bruising

5

around the incision above his belly button. *Id.*, ¶ 15. There was no tenderness on palpation. *Id.* The nurse advised Cherry to continue taking Tylenol. ECF No. 78, ¶ 41. She also advised him to increase fluids and avoid aggravating factors. ECF No. 63, ¶ 16. He agreed with the plan of care. *Id.*

Cherry saw Koren on September 5, 2018 for an assessment due to his complaints of pain and his claim that three days of pain pills was not enough. ECF No. 55, ¶ 17; ECF No. 63, ¶ 17; ECF No. 78, ¶ 42. Upon examination, Koren found that Cherry's incision sites were healing and his right inguinal area and supratesticular sutures were nontender. ECF No. 63, ¶ 18. Cherry told Koren he was still in "extreme" pain from the surgery. ECF No. 55, ¶ 18. Koren did not prescribe more Vicodin, though she adjusted Cherry's APAP prescription. *Id.*; ECF No. 63, ¶ 21. She advised him to continue taking Tylenol. ECF No. 63, ¶ 26. Koren also assessed Cherry with constipation due to lack of bowel movements. *Id.*, ¶ 19.

Koren contacted the surgeon's nurse, who told Koren that Cherry's complaints were likely due to nerve irritation from surgery and that constipation must be avoided. ECF No. 63, ¶ 22. Cherry saw Koren again on September 7, 2018. *Id.*, ¶ 23; ECF No. 55, ¶ 18. Cherry still complained of pain. ECF No. 55, ¶ 18. Koren told him to continue to take Tylenol and also entered prescriptions for an ice bag and scrotal support. ECF No. 63, ¶¶ 25–26.

There were no objective indications that Cherry was in excessive pain at either the September 5 or September 7 visits. ECF No. 63, ¶ 28. Koren concluded that extending the Hydrocodone/APAP (Vicodin) prescription was not medically necessary; Cherry ambulated without difficulty and her examination showed healing surgical sites and a nontender right inguinal area. *Id.*, ¶ 27. Hydrocodone/APAP (Vicodin) is a narcotic and controlled medication that is highly addictive. *Id.*, ¶ 31. Cherry already had a Tylenol prescription that he could take as needed

6

to address surgical pain, and Koren determined that was enough as it treats mild to moderate pain. *Id.*, ¶¶ 29–30.

No medical provider from St. Clare Memorial Hospital or from GBCI advised Cherry that Tylenol was not a reasonable medication to address surgical pain. ECF No. 63, ¶ 33. Cherry had Tylenol in his cell to use as needed. *Id.*, ¶ 36. Post-surgery, Cherry would not take the Tylenol provided to him claiming that it was for pre-existing back pain, not to treat pain from his surgery. *Id.*, ¶¶ 34–35. When the Hydrocodone/APAP prescription ended, Cherry started taking Tylenol again for his back pain. *Id.*, ¶ 37. His pain resolved in mid to late September. *Id.*, ¶ 38.

## ANALYSIS

### A. Legal Standard

Summary judgment is appropriate when the moving party shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In deciding a motion for summary judgment, the court must view the evidence and make all reasonable inferences that favor them in the light most favorable to the non-moving party. *Johnson v. Advocate Health & Hosps. Corp.*, 892 F.3d 887, 893 (7th Cir. 2018) (citing *Parker v. Four Seasons Hotels, Ltd.*, 845 F.3d 807, 812 (7th Cir. 2017)). The party opposing the motion for summary judgment must "submit evidentiary materials that set forth specific facts showing that there is a genuine issue for trial." *Siegel v. Shell Oil Co.*, 612 F.3d 932, 937 (7th Cir. 2010) (citations omitted). "The nonmoving party must do more than simply show that there is some metaphysical doubt as to the material facts." *Id.* Summary judgment is properly entered against a party "who fails to make a showing to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." *Austin v. Walgreen*

*Co.*, 885 F.3d 1085, 1087–88 (7th Cir. 2018) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

**B. Deliberate Indifference**

Claims regarding the denial of medical care are analyzed under the Eighth Amendment, which prohibits cruel and unusual punishments. *See Estelle v. Gamble*, 429 U.S. 97, 104 (1976). To proceed on his Eighth Amendment claim, Cherry must demonstrate both that he "suffered from an objectively serious medical condition" and that the defendants were "deliberately indifferent to that condition." *Petties v. Carter*, 836 F.3d 722, 728 (7th Cir. 2016) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). "[D]eliberate indifference describes a state of mind more blameworthy than negligence." *Farmer*, 511 U.S. at 835. A prison official cannot be found liable under the Eighth Amendment unless he subjectively knows of an excessive risk of harm to an inmate's health or safety and disregards that risk. *Id.* at 837; *Perez v. Fenoglio*, 792 F.3d 768, 776 (7th Cir. 2015).

Though Koren argues Cherry cannot establish he had a serious medical need, Cherry is insistent that he was in "extreme" pain. ECF No. 62 at 3. A jury could reasonably conclude that Cherry's post-operative pain was objectively serious if they were to credit his testimony that he was in "extreme" pain when he saw Koren. *See Heard v. Tilden*, 774 F. App'x 985, 988 (7th Cir. 2019); *Greeno v. Daley*, 414 F.3d 645, 655 (7th Cir. 2005) ("there is no requirement that a prisoner provide 'objective' evidence of his pain and suffering—self-reporting is often the only indicator a doctor has of a patient's condition").

Cherry's claim that Koren was deliberately indifferent to his medical needs concerns management of his post-surgery pain. After surgery, Koren prescribed Hydrocodone/APAP (Vicodin) as needed (up to four times a day) for three days. Cherry complains this was not enough and that he was in "extreme" pain after the three-day prescription ended. However, disagreement

8

with a doctor's medical judgment is not enough to show deliberate indifference. *Berry v. Peterman*, 604 F.3d 435, 441 (7th Cir. 2010). "A medical professional acting in [her] professional capacity may be held to have displayed deliberate indifference only if the decision by the professional is such a substantial departure from accepted professional judgment, practice, or standards, as to demonstrate that the person responsible actually did not base the decision on such a judgment." *Sain v. Wood*, 512 F.3d 886, 895 (7th Cir. 2008) (internal quotation marks omitted).

Koren based her decision to deny Cherry's request to renew his prescription for a narcotic pain killer on her observations of Cherry, her physical examination, and her knowledge that the medication is addictive and habit-forming. As the Court of Appeals for the Seventh Circuit has explained, "[w]hether and how pain associated with medical treatment should be mitigated is for doctors to decide free from judicial interference, except in the most extreme situations." *Snipes v. DeTella*, 95 F.3d 586, 592 (7th Cir. 1996). While Cherry says his pain *was* extreme, the record does not support that this was an "extreme situation." Cherry had laparoscopic hernia surgery on August 23, 2018. Examination showed healing incisions. When he saw Koren on September 5 and 7, he was able to walk normally and there was no pain on palpation. His subjective report does not undermine Koren's medical judgment. She is entitled to summary judgment.

Because Cherry's claim against Koren fails, so too must his claims against Lutsey and Alsteen. Neither Lutsey nor Alsteen provided direct care to Cherry; their roles were administrative in nature and focused on the operations of the health services unit. As administrators, they were entitled to rely on the medical judgment of the treating providers. *See Rasho v. Elyea*, 856 F.3d 469, 478–79 (7th Cir. 2017). Thus, to prevail on his claim against them, Cherry needed to offer evidence that they had reason to doubt that Koren was basing her decision about post-surgery pain management on something other than medical judgment. *Heard v. Tilden*, 774 F. App'x 985, 988–

9

89 (7th Cir. 2019) (citations omitted). Because Koren's treatment was constitutionally sufficient, no jury could reasonably conclude that Lutsey or Alsteen violated Cherry's constitutional rights by not intervening in his post-operative care.

Cherry claims that Serrano was deliberately indifferent to his pain because she "intentionally" denied him his 3:30 p.m. dose of Vicodin on August 24, 2018. Even construing the record most favorably to Cherry, there is no evidence to support this conclusion. Serrano came to the unit to distribute medication. Any inmate on the list to receive medications, which Serrano did not maintain, should have been released from their cells to come and get their medication. However, Cherry's door did not open for the 3:30 p.m. medication pass. There is no indication of why—if he was not on the list, if his door malfunctioned, or if it did not open for some other reason (the court notes that his door also did not open for the 11:00 a.m. medication pass). When Cherry did not show up, she understood that to mean he was not taking a medication that was prescribed to be taken "as needed." Cherry argues that Serrano should have confirmed his refusal verbally and in person and cites to exhibits attached to one of his declarations. *See* ECF No. 88, ¶¶ 6–8, 30, 32; ECF No. 88-1 at 5–6, 8. Even assuming he could authenticate these documents, they do not support his contention that Serrano somehow violated protocol. There is no evidence she was responsible for his door not opening or that she should have taken any further steps when Cherry did not come to take an "as needed" medication. She is entitled to summary judgment.

Finally, Cherry is proceeding against Terrell and Przybylinski because they did not get him his Vicodin after he missed his 3:30 p.m. dose on August 24, 2018. The parties dispute specific facts about the conversations between Cherry and Terrell and Cherry and Przybylinski. By Cherry's account, both Terrell and Przybylinski were rude and unhelpful and generally disregarded

his pleas to get him his Vicodin. Even assuming his account is accurate, he does not state a claim against them.

As the court explained in its screening order, a delay in treating painful medical conditions, even if they are not life threatening, "may constitute deliberate indifference." *Arnett v. Webster*, 658 F.3d 742, 753 (7th Cir. 2011) (citing *McGowan v. Hulick*, 612 F.3d 636, 640 (7th Cir. 2010)). The court also explained that it was unlikely that the less than six-hour delay in receiving medication would amount to cruel and unusual punishment. Based on the now fully developed record, the court concludes that this limited delay in receiving medication did not violate Cherry's constitutional rights.

In *Burton v. Downey*, 805 F.3d 776 (7th Cir. 2015), the plaintiff brought suit alleging that the delay in receiving his pain medication constituted deliberate indifference. When Burton arrived at the jail, he had nine prescriptions. *Id.* at 784. Per jail policy, all his medication had to be confiscated and then approved by the jail medical department before they could be dispensed to him. *Id.* During a medical exam about 35 hours after being booked into the jail, Burton reported experiencing severe pain as well as withdrawal symptoms from not having his narcotic pain medication. *Id.* at 780. In all, Burton went without his pain medication two days. *Id.* at 785. The Seventh Circuit found that the two-day delay, standing alone, did not constitute deliberate indifference. *Id.*

Cherry's less than six-hour delay in receiving pain medication is much shorter than two full days. Even considering that Cherry complained to both Terrell and Przybylinski on multiple occasions during that delay, the court is satisfied that the record does not support a finding of deliberate indifference. The time between doses is not significantly longer than Cherry would go overnight; the ten hours between his 11:00 a.m. dose and 9:00 p.m. dose is only forty-five minutes

11

longer than the time between scheduled doses at 8:45 p.m. and 6:00 a.m. He also had Tylenol available to him in his cell that he could take.

This is not a case like *Lewis v. McClean*, 864 F.3d 556, 558–60 (7th Cir. 2017), where it took the defendants nearly ninety minutes to respond to the plaintiff's complaints of back pain that left him unable to move from a sitting position on his bed for over two hours. His condition was visible to the defendants via a live video feed, and he remained seated on his bed until he fell to the floor unable to move. *Id.* at 559–60.

In contrast, Cherry was walking to get his medication and to go to and from dinner. He was able to communicate that he was in pain and ask for help. He does not present evidence he was experiencing the kind of emergency Lewis was. And absent an emergency, prison officials do not have to drop everything to respond to an inmate's demand. *See Burks v. Raemisch*, 555 F.3d 592, 595 (7th Cir. 2009). Prison operations would grind to a halt if guards had to interrupt their duties to respond immediately to every complaint.

A jury could not find that Terrell or Przybylinski "unnecessarily prolonged his pain" by failing to get Cherry his Vicodin over a period of five-and-a-half hours. *Perez v. Fenoglio*, 792 F.3d 768, 777–78 (7th Cir. 2015). They are entitled to summary judgment.

## Conclusion

**IT IS THEREFORE ORDERED** that Cherry' motion for summary judgment, ECF No. 54, is **DENIED**.

**IT IS FURTHER ORDERED** that the defendants' motions for summary judgment, ECF Nos. 61 and 76, are **GRANTED** and this case is **DISMISSED with prejudice**.

Dated at Green Bay, Wisconsin this 1st day of September, 2020.

s/ William C. Griesbach
William C. Griesbach
United States District Judge

This order and the judgment to follow are final.  Plaintiff may appeal this court's decision to the Court of Appeals for the Seventh Circuit by filing in this court a notice of appeal within **30 days** of the entry of judgment.  *See* Fed. R. App. P. 3, 4.  This court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the 30-day deadline.  *See* Fed. R. App. P. 4(a)(5)(A).  If Plaintiff appeals, he will be liable for the $505.00 appellate filing fee regardless of the appeal's outcome.  If Plaintiff seeks leave to proceed *in forma pauperis* on appeal, he must file a motion for leave to proceed *in forma pauperis* with this court.  *See* Fed. R. App. P. 24(a)(1).  Plaintiff may be assessed another "strike" by the Court of Appeals if his appeal is found to be non-meritorious.  *See* 28 U.S.C. § 1915(g).  If Plaintiff accumulates three strikes, he will not be able to file an action in federal court (except as a petition for habeas corpus relief) without prepaying the filing fee unless he demonstrates that he is in imminent danger of serous physical injury.  *Id.*

Under certain circumstances, a party may ask this court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b).  Any motion under Federal Rule of Civil Procedure 59(e) must be filed within **28 days** of the entry of judgment.  Any motion under Federal Rule of Civil Procedure 60(b) must be filed within a reasonable time, generally no more than one year after the entry of judgment.  The court cannot extend these deadlines.  *See* Fed. R. Civ. P. 6(b)(2).

A party is expected to closely review all applicable rules and determine, what, if any, further action is appropriate in a case.